United States Courts
Southern District of Texas
FILED

NOV 05 2015

David J. Bradley, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION



| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | Criminal No. 15-CR-318 |
| v. | § § | UNDER SEAL |
| PRECIOUS DESHIELD,<br>ROLAND JOHNSON, and<br>ANN ANYANWU, | § § § § | |
| Defendants. | § § | |

## SUPERSEDING INDICTMENT

The Grand Jury charges:

### General Allegations

At all times material to this Superseding Indictment, unless otherwise specified:

### The Medicare Program

1. The Medicare Program ("Medicare") was a federal healthcare program providing benefits to individuals who were over the age of 65 or disabled. Medicare was administered by the United States Department of Health and Human Services, through its agency, the Centers for Medicare and Medicaid Services ("CMS"). Individuals receiving benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

3. "Part A" of the Medicare program covered certain eligible home healthcare costs for medical services provided by a home healthcare agency ("HHA") to beneficiaries requiring home health services because of an illness or disability causing them to be homebound. Payments for home healthcare services were typically made directly to a HHA based on claims submitted to

the Medicare program for qualifying services that had been provided to eligible beneficiaries, rather than to the beneficiaries.

4. Physicians, clinics, and other healthcare providers, including HHAs that provided services to Medicare beneficiaries, were able to apply for and obtain a Medicare "provider number." A healthcare provider that was issued a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries. A Medicare claim was required to set forth, among other things, the beneficiary's name and Medicare identification number, the services that were performed for the beneficiary, the date the services were provided, the cost of the services, and the name and identification number of the physician or other healthcare provider that ordered the services.

5. The Medicare program paid for home health services only if the patient qualified for home healthcare benefits. A patient qualified for home healthcare benefits only if:

    a. the patient was confined to the home, also referred to as homebound;

    b. the patient was under the care of a physician who specifically determined there was a need for home healthcare and established the Plan of Care (or "POC"); and

    c. the determining physician signed a certification statement specifying that:

        i. the beneficiary needed intermittent skilled nursing services, physical therapy, or speech therapy;

        ii. the beneficiary was confined to the home;

        iii. a POC for furnishing services was established and periodically reviewed; and

        iv. the services were furnished while the beneficiary was under the care of the physician who established the POC.

6. Medicare regulations required HHAs providing services to Medicare patients to maintain complete and accurate medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting actual treatment of the patients to whom services were provided and for whom claims for payment were submitted by the HHA.

7. These medical records were required to be sufficient to permit Medicare, through its contractors, to review the appropriateness of Medicare payments made to the HHA.

## THE MEDICAID PROGRAM

8. Medicaid was implemented in 1967 under the provisions of Title 19 of the Social Security Act of 1965. The State of Texas and the federal government shared the cost of funding the Texas Medicaid Program. The Medicaid program helped pay for reasonable and necessary medical procedures and services provided to individuals who were deemed eligible under state low-income programs. Medicaid was "a health care benefit program" as defined by Title 18, United States Code, Section 24(b).

9. The State of Texas contracted with Texas Medicaid and Healthcare Partnership ("TMHP") to process claims submitted by physicians and other healthcare providers for individuals who received benefits paid for by Medicaid.

10. In order to receive reimbursement from Medicaid, a provider was required to submit an application and become an approved Medicaid provider. If the provider met certain minimum qualifications, Medicaid approved the application and the provider was issued a unique identification number also known as a "provider number." The provider was then allowed to submit bills for services known as "claims" to Medicaid for reimbursement for the cost of providing medically necessary services to Medicaid beneficiaries.

11. Upon assignment of a Medicaid provider number, a current Texas Medicaid Provider Procedures manual was distributed to the provider. Updates to the procedure manual were included in the Texas Medicaid Bulletins which were distributed to the provider by TMHP and available online. The procedure manual, bulletins, and updates detailed the rules and regulations pertaining to services covered by Medicaid and how to appropriately bill for providing services to recipients.

12. Medicaid permitted approved providers to submit Medicaid claims on paper or electronically. Medicaid required that submitted claims contained the following details: the Medicaid beneficiary's name and Medicaid identification number; the service that the provider provided; the amount of time billed in 15 minute units; the date of service; and the charge for the service provided. Medicaid required providers to provide the services to the beneficiary prior to submitting a claim for payment to Medicaid.

13. Personal Assistance Services ("PAS") were a Medicaid benefit that provided beneficiaries with services that aided in living independently. PAS included, among other things, bathing, housekeeping, meal preparation, and grocery shopping.

14. To provide PAS, an agency was required to be licensed as a home and community support services agency by the Texas Department of Aging and Disability Services ("DADS"). DADS required agencies to submit an application, develop policies and procedures, and undergo monitoring audits every other year. Once licensed, DADS provided all agencies with a handbook, which detailed the rules and regulations pertaining to PAS.

15. PAS were required to be provided according to an individualized service plan, which included the types of services to be provided, the location where services would be provided, the frequency and duration of services, and a plan for supervision of the services. DADS

required agencies to conduct face-to-face visits with all beneficiaries and their PAS provider every six months.

16. DADS required providers to keep client records, which accurately and completely documented all services and which were readily accessible. Agencies were required to ensure that entries regarding the delivery of services were not altered without evidence and explanation for each alteration.

17. Medpsych Home Health Care ("Medpsych") was a Texas corporation doing business at 14601 Bellaire Boulevard, Houston, Texas. Medpsych submitted claims to Medicare for home health services and claims to Medicaid for PAS.

18. Defendant **PRECIOUS DESHIELD**, a resident of Fort Bend County, Texas, was the owner, director of nursing, officer, and administrator of Medpsych.

19. Defendant **ROLAND JOHNSON**, a resident of Fort Bend County, Texas, was an operator of Medpsych.

20. Defendant **ANN ANYANWU**, a resident of Harris County, Texas, was a nurse of Medpsych.

21. Dr. A was a physician who authorized home health services that Medpsych purportedly provided to Medicare beneficiaries.

## COUNT 1
### Conspiracy to Commit Healthcare Fraud
### (Violation of 18 U.S.C. § 1349)

22. Paragraphs 1 through 21 are re-alleged and incorporated by reference as if fully set forth herein.

23. From in or around 2010 through in or around 2015, the exact dates being unknown to the Grand Jury, in the Houston Division of the Southern District of Texas, and elsewhere, Defendants

**PRECIOUS DESHIELD,
ROLAND JOHNSON, and
ANN ANYANWU**

did knowingly and willfully combine, conspire, confederate, and agree with each other and others known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a healthcare benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said healthcare benefit program, in connection with the delivery of and payment for healthcare benefits, items, and services.

## Purpose of the Conspiracy

24. It was a purpose of the conspiracy for Defendants **PRECIOUS DESHIELD**, **ROLAND JOHNSON**, **ANN ANYANWU**, and others known and unknown to the Grand Jury to unlawfully enrich themselves by (a) submitting false and fraudulent claims to Medicare, (b) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of proceeds from the fraud, and (c) diverting proceeds of the fraud for the personal use and benefit of Defendants and their co-conspirators.

## Manner and Means of the Conspiracy

25. Defendant **PRECIOUS DESHIELD** maintained a Medicare provider number, which Defendants **PRECIOUS DESHIELD** and **ROLAND JOHNSON** used to submit claims to Medicare for home health services that were not medically necessary or not provided.

26. Defendant **PRECIOUS DESHIELD** maintained a Medicaid provider number, which Defendants **PRECIOUS DESHIELD** and **ROLAND JOHNSON** used to submit claims to Medicaid for PAS.

27. Defendants **PRECIOUS DESHIELD** and **ROLAND JOHNSON** paid kickbacks to individuals to refer Medicare beneficiaries to Medpsych for home health services.

28. Defendants **PRECIOUS DESHIELD** and **ROLAND JOHNSON** paid kickbacks to Medicare beneficiaries to sign up with Medpsych for home health services.

29. To induce some Medicare beneficiaries to sign up with Medpsych for home health services that were medically unnecessary or not provided, Medpsych designated those Medicare beneficiaries' relatives as PAS providers under Medicaid. Defendants **PRECIOUS DESHIELD** and **ROLAND JOHNSON** billed Medicaid for PAS that those relatives purportedly provided to the Medicare/Medicaid beneficiary. Medicaid paid Defendants **PRECIOUS DESHIELD** and **ROLAND JOHNSON** on those claims. Using that money, Defendants **PRECIOUS DESHIELD** and **ROLAND JOHNSON** paid those relatives for the purportedly provided PAS.

30. Defendants **PRECIOUS DESHIELD** and **ROLAND JOHNSON** paid physicians in exchange for them authorizing medically unnecessary home health services for Medicare beneficiaries for whom Defendants **PRECIOUS DESHIELD** and **ROLAND JOHNSON** submitted claims to Medicare.

31. Defendants **PRECIOUS DESHIELD** and **ANN ANYANWU** signed medical records falsely representing that Medicare beneficiaries qualified for home health services, when they actually did not qualify for home health services under Medicare.

32. Defendants **PRECIOUS DESHIELD** and **ANN ANYANWU** signed medical records falsely representing that Medicare beneficiaries received home health services, when they actually did not receive home health services.

33. Defendants **PRECIOUS DESHIELD** and **ROLAND JOHNSON** submitted and caused the submission of claims to Medicare for home health services that were not provided or were not medically necessary. Medicare paid Medpsych on those claims.

34. From in or around 2010 to in or around 2015, Medpsych billed Medicare approximately $8.8 million for home health services that it had purportedly provided to Medicare beneficiaries. Medicare paid approximately $5.9 million on those claims.

35. From in or around 2012 to in or around 2013, Medpsych billed Medicaid approximately $11,000 for PAS that it had purportedly provided to Medicaid beneficiaries through their relatives. Medicaid paid approximately $6,300 on those claims.

36. After Medicare and Medicaid deposited payments into Medpsych's bank accounts, Defendants **PRECIOUS DESHIELD** and **ROLAND JOHNSON** transferred proceeds of the fraud to Defendant **ANN ANYANWU**, themselves, and their co-conspirators.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-5
### Healthcare Fraud
### (Violation of 18 U.S.C. §§ 1347 and 2)

37. Paragraphs 1 through 21 and 23 through 36 are re-alleged and incorporated by reference as if fully set forth herein.

38. On or about the date specified below, in the Houston Division of the Southern District of Texas, and elsewhere, Defendants

**PRECIOUS DESHIELD,**
**ROLAND JOHNSON,** and

ANN ANYANWU

aided and abetted by, and aiding and abetting, others known and unknown to the Grand Jury, in connection with the delivery of and payment for healthcare benefits, items, and services, did knowingly and willfully execute and attempt to execute, a scheme and artifice to defraud a healthcare benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of Medicare, as set forth below:

| Count | Defendants | Medicare Beneficiary | On or About Dates of Claim | Approximate Medicare Payment |
|---|---|---|---|---|
| 2 | PRECIOUS DESHIELD, ROLAND JOHNSON and ANN ANYANWU | P.H. | September 20, 2013 to November 18, 2013 | $5,670.12 |
| 3 | PRECIOUS DESHIELD and ROLAND JOHNSON | J.C. | December 11, 2014 to February 8, 2015 | $3,893.89 |
| 4 | ROLAND JOHNSON and ANN ANYANWU | D.S. | December 12, 2013 to February 9, 2014 | $4,211.50 |

| 5 | ROLAND JOHNSON and ANN ANYANWU | W.L. | October 1, 2013 to November 29, 2013 | $5,670.12 |

All in violation of Title 18, United States Code, Sections 1347 and 2.

## COUNT 6
### Conspiracy to Pay Healthcare Kickbacks
### (Violation of 18 U.S.C. § 371)

39. Paragraphs 1 through 21 and 23 through 36 are re-alleged and incorporated by reference as if fully set forth herein.

40. From in or around 2010 through in or around 2015, the exact dates being unknown to the Grand Jury, in the Houston Division of the Southern District of Texas, and elsewhere, Defendants

**PRECIOUS DESHIELD and
ROLAND JOHNSON**

did knowingly and willfully combine, conspire, confederate and agree with others known and unknown to the Grand Jury, to commit certain offenses against the United States, that is,

a. to violate Title 42, United States Code, Section 1320a-7b(b)(1), by knowingly and willfully soliciting and receiving remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicare; and for the purchasing, leasing, ordering, and arranging for, and recommending the purchasing, leasing, and ordering of any good, item, and service for which payment may be made in whole or in part by a Federal healthcare program, that is, Medicare; and

b. to violate Title 42, United States Code, Section 1320a-7b(b)(2), by knowingly and willfully offering and paying remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicare; and for the purchasing, leasing, ordering, and arranging for and recommending the purchasing, leasing, and ordering of any good, item, and service for which payment may be made in whole or in part by a Federal healthcare program, that is, Medicare.

### Purpose of the Conspiracy

41. It was a purpose of the conspiracy for Defendants **PRECIOUS DESHIELD** and **ROLAND JOHNSON** and their co-conspirators to unlawfully enrich themselves by paying and receiving kickbacks and bribes in exchange for the referral of Medicare beneficiaries for whom Medpsych submitted claims to Medicare.

### Manner and Means of the Conspiracy

The manner and means by which Defendants **PRECIOUS DESHIELD** and **ROLAND JOHNSON** and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things, the following:

42. Paragraphs 25 through 36 are re-alleged and incorporated by reference as though fully set forth herein.

### Overt Acts

43. In furtherance of the conspiracy, and to accomplish its object and purpose, the conspirators committed and caused to be committed, in the Houston Division of the Southern District of Texas, the following overt acts:

a. In or around June 2015, Defendant **ROLAND JOHNSON** paid Medicare beneficiary J.C. approximately $300 to remain with Medpsych for home health services.

b. In or around January 2015, Defendants **PRECIOUS DESHIELD** and **ROLAND JOHNSON** paid Medicare beneficiary S.J. approximately $300 to sign up with Medpsych for home health services.

c. In or around December 2013, Defendant **ROLAND JOHNSON** paid Dr. A approximately $60 for signing documents authorizing Medicare beneficiary D.S. to receive home health services from Medpsych.

d. In or around January 2014, Defendant **ROLAND JOHNSON** paid Dr. A approximately $60 for signing documents authorizing Medicare beneficiary F.D. to receive home health services from Medpsych.

All in violation of Title 18, United States Code, Section 371.

### COUNTS 7-10
### Payment and Receipt of Healthcare Kickbacks
### (Violation of 42 U.S.C. § 1320a-7b(b)(1) and (b)(2), 18 U.S.C. § 2)

44. Paragraphs 1 through 21, 23 through 36, and 40 through 43 of this Superseding Indictment are re-alleged and incorporated by reference as if fully set forth herein.

45. On or about the dates enumerated below, in Harris County, in the Southern District of Texas, and elsewhere, Defendants as set forth below, aided and abetted by, and aiding and abetting, others known and unknown to the Grand Jury, did knowingly and willfully offer, pay, solicit, and receive remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicare; and for the purchasing, leasing, ordering, and arranging for and recommending the

purchasing, leasing, and ordering of any good, item, and service for which payment may be made in whole or in part by a Federal health care program, that is, Medicare as set forth below:

| Count | Defendant(s) | In or Around Date | Approximate Amount of Kickback |
|---|---|---|---|
| 7 | **ROLAND JOHNSON** | June 2015 | $300 |
| 8 | **PRECIOUS DESHIELD** and **ROLAND JOHNSON** | January 2015 | $300 |
| 9 | **ROLAND JOHNSON** | December 2013 | $60 |
| 10 | **ROLAND JOHNSON** | January 2014 | $60 |

All in violation of Title 42, United States Code, Section 1320a-7b(b)(1) and (b)(2) and Title 18 United States Code, Section 2.

## CRIMINAL FORFEITURE
### (18 U.S.C. § 982(a)(7))

46.     Pursuant to Title 18, United States Code, Section 982(a)(7), the United States of America gives notice to Defendants **PRECIOUS DESHIELD**, **ROLAND JOHNSON**, and **ANN ANYANWU** that upon conviction of any Counts in this Superseding Indictment, all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offenses—approximately $5,985,644.69—is subject to forfeiture.

47. Defendants **PRECIOUS DESHIELD, ROLAND JOHNSON,** and **ANN ANYANWU** are notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture.

48. Defendants **PRECIOUS DESHIELD, ROLAND JOHNSON,** and **ANN ANYANWU** are notified that if any of the forfeitable property, or any portion thereof, as a result of any act or omission of Defendants or their co-conspirators:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred, or sold to, or deposited with a third party;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States to seek forfeiture of any other property of Defendants up to the total value of the property subject to forfeiture, pursuant to Title 21, United States Code, Section 853(p), incorporated by reference in Title 18, United States Code, Section 982(b)(1).

A TRUE BILL.

Original Signature on File

FOREPERSON

KENNETH MAGIDSON
UNITED STATES ATTORNEY

_____
WILLIAM S.W. CHANG
SCOTT ARMSTRONG
TRIAL ATTORNEYS
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE